UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

In re:  Janice K. Jennings,

    Debtor

_____

**BRANDON JAMES MAXFIELD,**

    Appellant,

vs.

**JANICE K. JENNINGS,**

    Appellee.

_____

Case No.  6:08-cv-1845-Orl-35

## ORDER

**THIS CAUSE** is presented before the Court on appeal from a decision of the bankruptcy court dismissing a creditor's claim brought against the debtor under 11 U.S.C. § 523(a)(2)(A) and § 523(a)(6).  Having considered the claim, reviewed the respective filings of the parties and being otherwise fully advised as to the applicable law and facts, the Court **ORDERS** that the decision of the bankruptcy court is **AFFIRMED IN PART** and **REMANDED IN PART** for further proceedings consistent with this Order.

By way of background, the creditor in this action, Brandon James Maxfield, obtained a judgment in the amount of $24,774,146.53 against Bruce Jennings, Bryco Arms, Inc., and B.L. Jennings Inc. on the basis of a claim of negligence and products liability.[1]  Though the acts alleged in the complaint were egregious and the resulting injury to the claimant

---

[1] Maxfield was rendered a permanent quadriplegic at age seven due to a defective Bryco/Jennings gun.

catastrophic, because the underlying claim sounded in negligence and products liability, the primary claim on its face was and is dischargeable in bankruptcy. In re Jacquis, 131 B.R. 1004, 1009 (Bankr. M.D. Fla. 1991).

Prior to the entry of the judgment, however, Janice K. Jennings, the debtor in this action, acting in concert with her former husband, Bruce Jennings, executed a deed purporting to "re-transfer" an asset of one of the defendants in the personal injury action to a third party, Bruce Jennings's other ex-wife. This re-transfer deed was ostensibly to provide proof of an earlier transfer of the same property, for which the deed had purportedly been lost. In fact, in a subsequent adversary proceeding, the bankruptcy court found that the transfer of the asset was a fraudulent transfer intended to put the asset beyond the reach of the debtor's creditors, including Maxfield. On that petition, the bankruptcy court found that the debtor was liable to the creditors, including Maxfield, in the amount of $3.9 million, jointly and severally with her co-conspirators in the fraudulent transfer. It is that $3.9 million judgment that Maxfield seeks to have adjudicated as non-dischargeable pursuant to 11 U.S.C. § 523(a)(2)(A) and § 523(a)(6). In summary, he alleged that the debtor's participation in a conspiracy, fraudulently transferring property resulting in the diminution in value of the creditor's bankruptcy estate, qualified as "actual fraud" under § 523(a)(2)(A) and as a "willful and malicious injury" under § 523(a)(6), rendering the $3.9 million debt non-dischargeable in bankruptcy.

On a motion to dismiss, the bankruptcy court dismissed the petition, finding that the creditor had failed to allege and could not allege facts establishing the necessary elements of a traditional claim of fraud. Specifically, on Count I for actual fraud under § 523(a)(2)(A), the court found that Maxfield could not allege the elements of misrepresentation or reliance

and could not allege that the debtor had obtained any benefit from her fraud perpetrated against Maxfield.  Additionally the court found, in dismissing Count II, that Plaintiff's theory of liability based on willful and malicious injury by the debtor and brought pursuant to § 523(a)(6) could not be sustained because the debtor was a "mere co-conspirator" with the principal perpetrator, Bruce Jennings.

Thus, three questions are presented on this appeal: 1) whether fraud committed by a debtor, which does not require the reliance of the creditor in order to be accomplished to his detriment, may nonetheless be found to be non-dischargeable as "actual fraud" for purposes of § 523(a)(2)(A); 2) whether the "receipt of benefits" doctrine, which requires that a debtor in bankruptcy have actually received some benefit from the fraud in order for it to be non-dischargeable, has been abrogated by the Supreme Court or, alternatively, whether the requirement may be satisfied by reference to benefits received by the conspiracy in which the debtor is engaged; and 3) whether a direct act of a conspirator in furtherance of a conspiracy, which act benefits the conspiracy, may constitute a willful and malicious injury, "the sort of intentional tort, which is required to render a debt non-dischargeable under § 523(a)(6)."  (Dkt. 2, Attachment # 3 - Order Being Appealed 1).

The Court answers the first question in the negative and concludes, therefore, that it need not reach the second question.  However, the Court finds that in certain circumstances willful and malicious injury may be inflicted by a co-conspirator, resulting in "the sort of intentional tort, which is required to render a debt non-dischargeable under § 523(a)(6)."  As such, the bankruptcy court's categorical denial on a motion to dismiss of Maxfield's right to pursue a claim of non-dischargeability is reversed and remanded to the bankruptcy court for further proceedings.

**I. Motion to Dismiss Standard**

As an initial matter, this action is presented before this Court on a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), made applicable in the bankruptcy context through Fed. R. Bankr. P. 7012(b)(6). The standard for considering a motion to dismiss is therefore the same in the context of a bankruptcy proceeding as it is in any other context. That is, the movant must establish that no relief can be granted to the non-movant under any set of facts that would be consistent with the allegations set forth in the complaint or could be pled on amendment. In re Jet 1 Center, Inc., 319 B.R. 11, 14 (Bankr. M.D. Fla. 2004). In considering the sufficiency of that showing, the non-movant is entitled to all reasonable inferences; the court must accept the allegations in the complaint as true and construe them in the light most favorable to the non-movant. Fin. Sec. Assurance, Inc. v. Stephens, Inc., 500 F.3d 1276, 1282 (11th Cir. 2007). However, the complaint must contain direct or inferential allegations pertaining to each material element in order to sustain recovery under a particular legal theory. Id. at 1282-83.

Applying this standard, the bankruptcy court has determined essentially that no set of facts could be established to sustain an action for non-dischargeability. For the reasons that follow, the Undersigned affirms in part and reverses in part.

**II. § 523(a)(2)(A) - Actual Fraud**

It is undisputed that the essential elements of a claim of fraud are: 1) a false representation made with the purpose and intent to deceive; 2) reliance on the misrepresentation; 3) reliance which is justified; and 4) loss sustained as a result of the misrepresentation. In re Bilzerian, 153 F.3d 1278, 1281 (11th Cir. 1998). Even activity that is clearly improper and that leads to losses is deemed not actionable as fraud unless the

plaintiff can plead reliance. See TransPetrol, Ltd. v. Radulovic, 764 So. 2d 878, 879 (Fla. Dist. Ct. App. 2000) (stating that common law fraud claim could not be maintained by creditor where attorneys and accountants allegedly participated in a scheme to transfer property of a debtor to off-shore accounts out of the reach of the creditor because creditor could not allege reliance on any statement of the accountants and attorneys).

The Eleventh Circuit has not spoken on a claim of "actual fraud" in bankruptcy, but fraudulent misrepresentation and fraudulent pretenses cases have repeatedly confirmed that reliance is an essential element, without which a fraud claim may not proceed. See e.g. In re Wood, 245 F. App'x 916, 917-18 (11th Cir. 2007). Addressing the issue of the interpretation of "actual fraud" in § 523(a)(2)(A), the Supreme Court in Field v. Mans held that:

> The operative terms in § 523(a)(2)(A), on the other hand, "false pretenses, a false representation, or actual fraud," carry the acquired meaning of terms of art. They are common-law terms, and, as we will see shortly in the case of "actual fraud," which concerns us here, they imply elements that the common law defined them to include.
> . . .
> . . . Following the established practice of following Congress's meaning in the generally shared common law when common law terms are used without further specification, we hold that § 523(a)(2)(A) requires justifiable, but not reasonable, reliance.

516 U.S. 59, 69, 73-75 (1995). Although § 523(a)(2)(A) does not explicitly delineate the elements of actual fraud, principles of statutory interpretation incorporate the common law elements of false representation and reliance.

Outlier cases like McClellan v. Cantrell suggest that fraudulent conduct is non-dischargeable even in the absence of the common law elements of actual fraud. 217 F.3d 890, 892-94 (7th Cir. 2000). Those courts look to the policy of the Bankruptcy Act in §

523(a)(2)(A) of preventing fraud and "not letting defrauders start over with a clean slate," id. at 893, to give an alternative, overly-broad meaning to the Act, specifically to the term "actual fraud," that is otherwise quite clear from the plain meaning of § 523(a)(2)(A). Those cases propose that actual fraud is not limited to instances of misrepresentations or misleading omissions, but instead encompasses a broader class of conduct to include "any deceit, artifice, trick, or design involving direct and active operation of the mind, used to circumvent and cheat another." Id., (quoting 4 Collier on Bankruptcy ¶ 523.08[1][e], 523-45 (15th ed., Lawrence P. King ed., 2000)).

However, the Act already considers the policy of preventing other wrongful behavior that does not constitute common law fraud and makes provisions for it in 11 U.S.C. § 523(a)(6) by making non-dischargeable "any debt for willful and malicious injury by the debtor to another entity or to the property of another entity." The bankruptcy court properly declined the invitation to expand the forfeiture of rights under bankruptcy beyond those forfeitures contained in the Act and approved in this Circuit. The only forfeitures contained in the Act are those under § 523(a)(2)(A) for false pretenses, false representations, and actual fraud, with each consisting of its common law elements, and those under § 523(a)(6) for "willful and malicious injury." Ironically, then, the creditor here cannot allege or prove reliance because the fraudulent conduct in which the debtor was engaged to Maxfield's clear detriment occurred without his knowledge and, therefore, without his reliance. The bankruptcy court therefore properly dismissed this claim.

The Court need not address whether an actual fraud claim requires receipt of benefits by the debtor, or whether the debtor here received benefits. Since the element of reliance is required for actual fraud and reliance has not been alleged, even if the

creditor could prove receipt of benefits by the debtor, the actual fraud claim could not prevail. Accordingly, the question of receipt of benefits is rendered moot.

### III. § 523(a)(6) - Willful and Malicious Injury

Malicious injury is the more compelling claim. The bankruptcy court, looking to the ruling in In re Nofziger, 361 B.R. 236 (Bankr. M.D. Fla. 2006), held that a conspiracy claim is not the sort of intentional tort involving the "willful and malicious injury" required to render a debt non-dischargeable under § 523(a)(6). The Eleventh Circuit has never created a broad rule that a conspiracy may not qualify as the sort of intentional tort covered by § 523(a)(6). In In re Thomas, the court ruled that a civil judgment against a debtor for conspiracy and malicious prosecution was non-dischargeable. 288 F. App'x 547, 549 (11th Cir. 2008). While § 523(a)(6) requires a deliberate or intentional injury rather than merely willful and malicious acts which cause an injury in order to render a debt non-dischargeable, the act committed may also be one "which is substantially certain to cause injury." In re Walker, 48 F.3d 1161, 1164-65 (11th Cir. 1995). Under this standard, the Court cannot say that a debtor's participation in a conspiracy can never qualify as an act "which is substantially certain to cause injury."

Moreover, the alleged acts of the debtor here are not merely those of a passive co-conspirator. Janice Jennings is not a conspirator in the sense that she and Bruce Jennings talked about or hatched a plan to injure the claimant or in the sense that she was merely a passive bystander. In this case, it is alleged, and the bankruptcy court has expressly found, that they carried out the plan and that they did so purposely. The debtor was an active participant. She executed the central document that permitted the fraudulent transfer of the asset. She pulled the trigger, so to speak. Whether she did so of her own

initiative or at the behest of her co-conspirator, even if alleged, is not dispositive. The Court cannot say on these facts as alleged and construed in the light most favorable to the creditor that judgment in his favor is impossible. His claim for non-dischargeability due to malicious injury should therefore proceed to a merits determination.

    **DONE** and **ORDERED** in Orlando, Florida, this 11th day of June, 2009.

*/s/ Mary S. Scriven*
MARY S. SCRIVEN
UNITED STATES DISTRICT JUDGE

Copies furnished to:
Counsel of Record
Unrepresented Parties